**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **CIVIL ACTION 08-0117-WS-C** |
| ) | |
| **40 ACRES OF REAL PROPERTY,** ) | |
| **MORE OR LESS, etc.,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter comes before the Court on plaintiff's Motion to Strike / Motion for Summary Judgment (doc. 41). The Motion has been briefed and is ripe for disposition.

**I.     Background.**

*A.     The Underlying Criminal Investigation.*

This civil forfeiture action has its roots in certain criminal proceedings in this District Court styled *United States v. Norman Young et al.*, Criminal No. 06-0277-WS. In that prosecution, Norman Young, Tammy Young, and three co-defendants were charged with violations of the Controlled Substances Act, to-wit: conspiracy to possess with intent to distribute more than 1,000 kilograms of marijuana, in violation of 21 U.S.C. § 846; and possession with intent to distribute hundreds of kilograms of marijuana on multiple occasions, in violation of 21 U.S.C. § 841.

In early 2005, the Drug Enforcement Administration ("DEA") commenced a significant narcotics investigation targeting Norman Young. (Breaux Decl. (doc. 41-4), ¶ 2.) During the course of this investigation, the DEA developed information that multiple suppliers on the Texas/Mexico border were shipping large loads of marijuana to Norman Young at his ranch/residence located in rural northwestern Mobile County. (*Id.*) The ranch/residence (the "Property") consists of approximately 40 acres of real property, owned by Norman and Tammy Young, located along the western boundary of Mobile County, Alabama, with a mailing address

of 340 Young Neck Road, Lucedale, Mississippi.[1]  The DEA's investigation revealed that Norman Young took delivery of large marijuana shipments at the Property, which he stored on the premises.  (*Id.*, ¶¶ 2-3, 5, 8, 12.)  A search warrant executed by the DEA at the Property on February 27, 2007, resulted in the seizure of marijuana, numerous firearms and ammunition, thousands of dollars in U.S. currency, and discarded vehicle gas tanks that appeared to have been utilized as containers for the marijuana shipments in transit.  (*Id.*, ¶¶ 8-12 & Exhs. 5, 6; Breedy Decl., ¶ 2; Villella Decl., ¶ 2.)

An arrest warrant was issued for Norman Young on February 26, 2007; however, he has never been apprehended and remains at large today.  (Breaux Decl., ¶¶ 4, 6 & Exh. 2.)[2]  His four co-defendants, including Tammy Young (who is Norman Young's wife), all pleaded guilty to violations of the Controlled Substance Act based on their admitted involvement in the marijuana

---

[1]      As maintained in Deed Book 5793, page 83, in the Office of the Judge of Probate, Mobile County, Alabama, the legal description of the Property is as follows:

"The East half of the Southwest Quarter of Section 30, Township 1 North, Range 4 West and being Lot Number 4, lying East of the Mississippi and Alabama line.

"EXCEPTING THEREFROM all interests in and to all oil, gas and other minerals in, on and/or under said property and all rights in connection therewith which may have been granted, reserved or leased to others by instruments of record in the office of the Judge of Probate of Mobile County, Alabama; and

"**It is the express intent of the grantors herein to convey ownership of all oil, gas and other mineral interests in, on and/or under said property and all rights in connection therewith which have not been previously granted to or reserved by others.**

"The above described real property does not constitute the homestead of the either [*sic*] of the grantors herein, Clyde E. Young, Jr., William Thomas Young and Morris E. Young."

(Complaint, ¶ 4; doc. 41-17, at 1.)

[2]      Norman Young was last spotted dashing into the woods near the ranch/residence as DEA agents descended upon the Property on February 27, 2007, to execute search and arrest warrants.  (Breaux Decl., ¶ 6.)  The U.S. Marshals Service Gulf Coast Regional Fugitive Task Force has actively attempted to execute arrest warrants on Norman Young and his uncle, David Mark Young, for the last two years; nonetheless, both fugitives have eluded capture to date.  (Carney Decl. (doc. 43-3), ¶¶ 2-4.)

distribution organization.  All of these co-defendants executed factual resumes implicating Norman Young and indicating that the Property played an integral role in their narcotics distribution activities, serving as a storehouse for hundreds of kilograms of marijuana and a location where drug deals were consummated.  For example, co-defendant Billy Wayne Butler described a transaction at the Property in which Norman Young paid a supplier $50,000 in cash in partial payment for a trailer containing 700 pounds of marijuana, which trailer was stored at the Property.  (Doc. 41-7, at 2.)  Co-defendant Dustin Nathaniel Miller described underground marijuana storage areas on the Property, including a subterranean bunker where Norman Young had secreted large quantities of marijuana.  (Doc. 41-9, at 2.)   Co-defendant Timothy Cox also identified these marijuana storage areas on the Property.  (Doc. 41-10, at 2.)  Finally, Tammy Young admitted that the Property "was used to conduct and facilitate marijuana transactions to include the storage of marijuana and marijuana proceeds."  (Doc. 41-16, at 6.)[3]

### B.     The Civil Forfeiture Action.

In its Complaint for Forfeiture *In Rem*, the Government seeks civil forfeiture of the Property pursuant to 21 U.S.C. § 881(a)(7), which provides that "[a]ll real property, including any right, title, and interest ... in the whole of any lot or tract of land and any appurtenances or improvements, which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of" the Controlled Substances Act punishable by more than one year's imprisonment "shall be subject to forfeiture to the United States."  *Id.*  Based on the above facts, the Government's position is that the Property was used, or intended to be used, to commit, or to facilitate the commission of, felony violations of the Act in the form of the marijuana distribution activities allegedly spearheaded by Norman Young, and that it is therefore subject to forfeiture under § 881(a)(7).

A critical inquiry in any civil forfeiture action is the identity of the subject property's

---

[3]     To supplement these statements from co-defendants directly implicating the Property in Norman Young's marijuana distribution activities, the Government has submitted the Declaration of Fernando Gutierrez-Torres (doc. 43-4).  In that document, Gutierrez-Torres (who was convicted of a marijuana conspiracy in another jurisdiction in August 2006) averred that he had visited the Property to collect payment on previous marijuana shipments, and that Norman Young had delivered to him $35,000 in cash at that location.  (Gutierrez-Torres Decl., ¶ 3.)

owner(s).  Probate records from Mobile County, Alabama, reflect that, on or about May 21, 2005, the Property was conveyed by Norman Levi Young, Clyde E. Young, Jr., William Thomas Young, and Morris E. Young to Norman Levi Young and Tammy K. Young.  (Doc. 41-17.)  The warranty deed purported to convey the grantors' entire fee simple interest in the Property to the grantees.  Thus, these records indicate that Norman and Tammy Young hold title to, and are the sole owners of, the Property that is the *in rem* defendant herein.  As explained below, neither of these record owners has opposed, or offered any viable basis for opposing, forfeiture in this case.

As a condition of her Plea Agreement (doc. 41-16) dated September 13, 2007, Tammy Young agreed to forfeit all of her right, title and interest in the Property (as well as certain currency and bank account proceeds not at issue herein) to the Government.  A Preliminary Order of Forfeiture entered by the undersigned on January 31, 2008, provided that Tammy Young's interest in the Property was "**condemned** and **forfeited** to, and **vested** in, the United States of America for disposition according to law."  (Crim. No. 06-277, doc. 151, at 2.)[4]  Despite actual notice of this forfeiture action, Tammy Young has expressly consented to, and has never opposed or contested, forfeiture of all of her right, title and interest in the Property to the Government herein.[5]

As for the Property's other owner of record, Norman Young remains a fugitive, and his present whereabouts are shrouded in mystery.[6]  The Government sought without success to serve

---

[4]     Because of an omission by the Government at sentencing, no final judgment of forfeiture was entered in Criminal No. 06-277 concerning Tammy Young's right, title and interest in the Property.  (Crim. No. 06-277, doc. 205.)  That oversight neither revived Tammy Young's interest in the Property nor negated her acquiescence to its forfeiture.

[5]     Court records confirm that the United States Marshals Service personally served Tammy Young with notice of this action on or about June 24, 2008.  (Doc. 16; Waggoner Decl. (doc. 43-2), ¶ 4.)  Upon receipt of notice, Tammy Young did not file a claim within the time periods provided by 18 U.S.C. § 983(a)(4)(A) or Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, nor has she otherwise expressed opposition to such forfeiture at any time.

[6]     Indeed, Tammy Young, who is Norman's wife of almost 20 years, informed the Government that she has been unaware of her husband's whereabouts since the return of the indictment in Criminal No. 06-277.  (Doc. 15; Waggoner Decl., ¶ 4.)  The U.S. Marshals Service has conducted numerous interviews with family members and associates of Norman Young, and

-4-

him with notice of these proceedings via personal service at his last known address in June 2008. (Doc. 15.)  The Government also posted a copy of the Complaint on the residence itself. (Waggoner Decl., ¶¶ 3-4.)  With no other means available to serve him, the Government, with leave of court, published notice of this forfeiture action once a week for three consecutive weeks in the *Press-Register*, a newpaper of general circulation in this district, with the final such publication made on August 14, 2008.  (Docs. 18, 21.)  The Government further published notice of this action on an official Government Internet site (www.forfeiture.gov) for at least 30 consecutive days, beginning on July 4, 2008.  (Doc. 22.)  Notwithstanding his constructive notice of these proceedings, Norman Young has not appeared in this action to contest forfeiture or to make a claim to the Property.[7]

In short, neither of the named, deeded owners of the Property have made a claim or have otherwise opposed forfeiture of same in these proceedings pursuant to 21 U.S.C. § 881(a)(7). However, two other groups of claimants have stepped forward to oppose forfeiture and claim a protectable interest in the Property.  Those two sets of claims are the focus of the Government's pending Motion to Strike / Motion for Summary Judgment.

---

has attempted to discern his current associates and financial dealings, all in a fruitless (thus far) attempt to pinpoint his location.  (Carney Decl., ¶¶ 3-4.)

[7]     The right to "reasonable notice extends even to fugitives from the law." *Gonzalez-Gonzalez v. United States*, 581 F. Supp.2d 272, 277 (D.P.R. 2008).  Indeed, Congress has specifically provided that, in civil forfeiture actions involving real property, if the owner cannot be served with notice because he "is a fugitive" or "cannot be located despite the exercise of due diligence, constructive service may be made in accordance with the laws of the State in which the property is located."  18 U.S.C. § 985(c)(2)(A), (C).  Alabama law authorizes constructive service by publication in Rule 4.3 of the Alabama Rules of Civil Procedure.  This is precisely what the Government did, by both newspaper and Internet, in addition to perfecting personal service on Norman Young's spouse and posting notice on the Property itself.  Under the circumstances presented here, the Court is satisfied that there were no other reasonable, pragmatic means available to the Government to serve Norman Young with notice of this forfeiture proceeding, given his fugitive status for the last 27 months.  Adequate constructive notice was given, and the Court specifically finds that Norman Young was entitled to no further or different notice of these proceedings pursuant to § 985(c).

**II.      The Young Claimants.**

      **A.      *Facts Relating to the Claim.*[8]**

On August 25, 2008, claimants Clyde Young, Jr., William Thomas Young and Morris E. Young (collectively, the "Young Claimants") filed a document styled "Verified Claim in Opposition to Civil Judicial Forfeiture" (doc. 19) in this action.  The Young Claimants are three brothers of Norman Young.  (W. Young Dep., at 25, 40; C. Young Dep., at 11, 23.)

The factual underpinnings of the Young Claimants' claim are these:  Back in 1998, the Young brothers' grandmother, Rosalie Young, executed a warranty deed conveying the Property to all four brothers (Norman, Clyde, William and Morris Young) as joint tenants in fee simple.  (Doc. 19, ¶ 2 & Attachment 1; W. Young Dep., at 25.)  From 1998 through early 2005, Norman Young and the Young Claimants jointly owned the Property.  Norman Young resided on the Property for some or all of that time period.  (C. Young Dep., at 26-27.)  In May 2005, all four Young brothers collectively conveyed their entire fee-simple interest in the Property to Norman and Tammy Young via warranty deed.  (Doc. 19, ¶ 3 & Attachment 2.)  Norman and Tammy Young paid neither money nor other valuable consideration in exchange for the Property.  (C. Young Dep., at 38, 45.)  The warranty deed did not delineate temporal restrictions or other conditions on the conveyance, nor was there any written agreement executed by the Young brothers to obligate Norman and Tammy Young to do or refrain from doing anything after they received title to the Property in their names exclusively.  (C. Young Dep., at 7-8, 33, 37-38, 41, 45-46; W. Young Dep., at 7, 41-42; M. Young Dep., at 15-17.)

---

[8]      In the face of the pending dispositive motion, the Court construes the record, including all evidence and factual inferences, in the light most favorable to the nonmoving party.  *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1136 (11th Cir. 2007).  Thus, the Young Claimants' evidence is taken as true and all justifiable inferences are drawn in their favor.  That said, claimants are not permitted to pick and choose portions of their testimony that are most favorable, and discard the remainder, to avoid entry of summary judgment against them.  *See, e.g., Evans v. Stephens*, 407 F.3d 1272, 1278 (11th Cir. 2005) ("Our duty to read the record in the nonmovant's favor stops short of not crediting the nonmovant's testimony in whole or part: the courts owe a nonmovant no duty to disbelieve his sworn testimony which he chooses to submit for use in the case to be decided.").  Thus, the Young Claimants must live with their own deposition testimony in this case, even when it is to their detriment.  This Court will not stitch together a version of the facts that paints the rosiest possible picture for them while ignoring harmful admissions in their own sworn testimony.

-6-

According to their Verified Claim, however, the Young Claimants' intent in conveying the Property was to allow Norman and Tammy Young to offer it "as collateral for a loan to be used for the construction, building or renovation of their home." (Doc. 19, ¶ 4.) The idea was that Norman and Tammy Young would put up the Property as collateral for a home construction loan, and upon repaying that loan, deed the Property back to all four Young brothers as it had been previously. (*Id.*, ¶ 6.) For whatever reason, Norman and Tammy Young never did obtain a loan to build or renovate their home. Based on that omission, the Young Claimants' Verified Claim insists that Norman and Tammy Young "breached their agreement and ... committed fraud upon the claimants for their failure to use the property as agreed, and ... the warranty deed should be set aside, and ownership of the property returned to the claimants." (*Id.*, ¶ 7.) Armed with such allegations of wrongdoing, the Young Claimants claim a legally cognizable interest in the Property on theories of fraud and lack of consideration for the conveyance.

Viewing the record facts in the light most favorable to the Young Claimants, there is certainly ample evidence that the purpose of the May 2005 conveyance was to furnish Norman and Tammy Young with collateral for a loan. (C. Young Dep., at 23, 32; W. Young Dep., at 23, 41; M. Young Dep., at 13.) But there is no evidence that Norman and Tammy Young promised or agreed to obtain the loan and reconvey the Property within a certain period of time, and several of the Young Claimants denied that there was any such definite time frame. (W. Young Dep., at 39; M. Young Dep., at 14.)[9] More importantly, Clyde Young testified that Norman Young came to him within a month after the conveyance, indicated that he had changed his mind about getting the loan, and offered to reconvey the Property and restore the deed back to the way it was. (C. Young Dep., at 34-35.) Indeed, Clyde Young's testimony was unequivocal that Norman Young had not defrauded his brothers of the Property and that Norman volunteered to reconvey the Property back to them if the Young Claimants merely asked, which they did not. (*Id.* at 35-37.) Upon Norman stating that he no longer intended to get a loan for the house, Clyde

---

[9]     The vagueness of this arrangement is embodied in William Young's testimony that "when the time got right they could do it" and that he did not give any thought or concern to Norman and Tammy Young's failure immediately to obtain the loan following conveyance of the Property. (W. Young Dep., at 40.)

Young did "[n]othing" and said that decision "didn't matter to [him]." (*Id.* at 35.)[10]  William Young testified similarly, that he did not believe Norman and Tammy Young had engaged in fraud to obtain the Property for use as collateral for a loan that never materialized.  (W. Young Dep., at 36.)  Indeed, even at the time of his April 2009 deposition, William Young testified to his understanding that Norman and Tammy Young still intended to go through with the loan and build their new house, and that they had been "in the process" of trying to obtain that loan.  (*Id.* at 37-38, 42.)  The Young Claimants have at no time filed suit against Norman and Tammy Young on grounds of fraud, breach of contract or otherwise, to set aside the May 2005 conveyance.  (C. Young Dep., at 36; W. Young Dep., at 43, 48-49; M. Young Dep., at 18.)

  **B.**  ***Analysis of Plaintiff's Motion to Strike or for Summary Judgment.***

  The Government contends that the Young Claimants' claim to the Property should be stricken or dismissed for two independent reasons.  First, as a procedural matter, the Government maintains that the Young Claimants lack statutory standing to contest the Property's forfeiture because they failed to file an answer in this action.  Second, setting aside this technical defect, the Government contends that the Young Claimants do not possess any legally cognizable interest in the Property, such that they lack Article III standing to contest its forfeiture.  The Court will consider each of these contentions (which the Young Claimants have opposed) in

---

   [10]  Placed in context, Clyde Young's ambivalence to Norman's reconveyance proposal is hardly surprising.  Another Young Claimant, William Young, testified that he had engaged in a similar transaction with his brothers where the land was never reconveyed.  In particular, William testified that in approximately 2005, the four brothers conveyed another parcel of 160 acres solely to William for his use as collateral in obtaining a home construction loan.  William decided not to go through with the loan, yet he still holds that parcel in his own name and never reconveyed it back to his brothers.  (W. Young Dep., at 24-36.)  On that occasion, the brothers agreed that William did not need to reconvey the property back to them, even though the purpose of the original conveyance to William (namely, to use as collateral for a loan) was no longer valid.  Thus, the Young Claimants' own testimony establishes that Norman and Tammy Young did nothing differently with regard to the Property than William Young (one of the Young Claimants) did with the 160-acre parcel that the brothers conveyed to him in 2005, without a hint or allegation of fraud or malfeasance.  There is no evidence or argument that William's situation vis a vis the 160-acre parcel is distinguishable from Norman's situation vis a vis the Property, at least as far as any deception or fraud of the other brothers is concerned.

turn.[11]

          *1.*     *Statutory Standing.*

      Although the Young Claimants filed their Verified Claim (doc. 19) in this action on August 25, 2008, they never filed an answer to the Complaint.  The Government relies on this omission as a cornerstone of its Motion to Strike.  In response, the Young Claimants simply state, with no citations to authority, that (1) they "are not named parties in the Complaint and therefore, cannot admit or deny any allegations made by the Plaintiff" and (2) "a civil forfeiture case ... would seemingly not require an answer to be filed by an intervener who asserts his or her right or interest to land irrespective of the alleged wrongdoing of the owner."  (Doc. 48, at 3-4.) These unsubstantiated statements are in direct conflict with applicable law.

      Contrary to the Young Claimants' stated position, three separate legal sources imposed a duty on them to file a timely answer in this action if they wished to contest the civil forfeiture of the Property.  First, the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions unequivocally provide that, in a civil forfeiture action arising from a federal statute, "[a] claimant must serve and file an answer to the complaint or a motion under Rule 12 within 20 days after filing the claim."  Supplemental Rule G(5)(b).[12]  Second, a federal statute

---

[11]      The law is clear that civil forfeiture claimants must establish both Article III standing and statutory standing.  *See, e.g., United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1544 (11th Cir. 1987) ("In addition to establishing Article III standing, claimants also must satisfy applicable statutory standing requirements.  Thus, ... statutory standing also is a threshold issue."); *United States v. $487,825.000 in U.S. Currency*, 484 F.3d 662, 664 (3rd Cir. 2007) ("In order to stand before a court and contest a forfeiture, a claimant must meet both Article III and statutory standing requirements."); *United States v. $7,000.00 in U.S. Currency*, 583 F. Supp.2d 725, 729 (M.D.N.C. 2008) ("In the civil forfeiture context, standing derives from two sources: statutes and Article III of the U.S. Constitution. ... A claimant must establish both."); *United States v. $11,918.00*, 2007 WL 3037307, *7 (E.D. Cal. Oct. 17, 2007) ("A claimant in a civil forfeiture case must establish both Article III standing and statutory standing.").  Although they both fall under the rubric of standing, these are distinct concepts subject to distinct analyses.

[12]      "The Rule's requirement that both a claim and an answer be filed is plain and unambiguous. ... Strict compliance with the rule requires both a claim and an answer."  *U.S. v. Ford 250 Pickup 1990 VIN No. 1FTHX26M1LKA69552*, 980 F.2d 1242, 1245 (8th Cir. 1992) (citation omitted); *see also United States v. $19,840.00 in U.S. Currency More or Less*, 552 F. Supp.2d 632, 636 (W.D. Tex. 2008) ("In order to defend against a forfeiture, a claimant must

-9-

provides that in cases where the Government files a civil complaint in a district court seeking forfeiture of property, "[a] person asserting an interest in seized property ... shall file an answer to the Government's complaint for forfeiture not later than 20 days after the date of the filing of the claim." 18 U.S.C. § 983(a)(4)(B). Third, the Notice of Civil Judicial Forfeiture approved by this Court for publication in the *Press-Register* and on www.forfeiture.gov in this case stated that "[a]ny person filing a verified claim shall file and serve an answer to the complaint or motion under Rule 12 within 20 days after filing a claim in accordance with Supplemental Rule G(5)(b)." (Doc. 10-2.) The Young Claimants were plainly on notice of their mandatory obligation to file an answer within 20 days after submitting their Verified Claim on August 25, 2008; however, they never did so.

Numerous courts have recognized that forfeiture claimants must strictly and scrupulously adhere to filing requirements in order to perfect standing.[13] This responsibility rests solely with claimants, as long as the Government provides proper notice. *See United States v. Real Property*, 135 F.3d 1312, 1317 (9th Cir. 1998) ("So long as the Government takes the steps mandated by due process to notify the record owner of an impending forfeiture, it is the owner's responsibility to comply with the procedural requirements for opposing the forfeiture."). The Young Claimants did not comply with those procedural requirements for contesting forfeiture. The only remaining question is what the legal ramifications of that omission are.

The Supplemental Rules provide that a claim may be stricken "for failing to comply with Rule G(5)," the rule requiring the filing of an answer. Rule G(8)(c)(i)(A). Indeed, federal courts in analogous circumstances have routinely stricken claims that do not strictly comply with the

timely file both a claim and an answer.").

[13]     *See, e.g., $38,000.00 Dollars*, 816 F.2d at 1547 ("Courts consistently have required claimants to follow the language of the Supplemental Rules to the letter."); *$487,825.000*, 484 F.3d at 665 ("Courts have repeatedly emphasized that forfeiture claimants must strictly adhere to the filing requirements to perfect standing."); *United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 598 (7th Cir. 2000) ("in our view, it was proper for the district court to insist on strict compliance with [the Supplemental Rules] to establish standing in this case when special circumstances were absent"); *$7,000.00*, 583 F. Supp.2d at 735 n.15 ("Courts typically require strict compliance with the procedural requirements of Supplemental Rule G, as well as its predecessor Supplemental Rule C.").

Supplemental Rules' requirements that claimants file a verified claim and an answer. *See, e.g., United States v. Commodity Account No. 549 54930 at Saul Stone & Co.*, 219 F.3d 595, 598 (7th Cir. 2000) (even though claimant argued that his unverified claim obviated need for answer, "it was proper for the district court to insist upon a timely answer" because strict compliance with standing aspects of Supplemental Rules is typically required); *United States v. Ford 250 Pickup 1990 VIN No. 1FTHX26M1LKA69552*, 980 F.2d 1242, 1245 (8th Cir. 1992) (rejecting claimant's contention that its claim "is detailed enough to serve as an answer to the complaint as well" where Supplemental Rules unambiguously require both claim and answer, and claimant had failed to show excusable neglect or meritorious defense for not filing answer); *United States v. $19,840.00 in U.S. Currency More or Less*, 552 F. Supp.2d 632, 635-36 (W.D. Tex. 2008) (claimant who timely filed claim was properly defaulted for filing answer two days late, entitling Government to final judgment forfeiting claimant's interest in the property); *United States v. One Hundred Fifty-Nine Thousand and Forty Dollars ($159,040.00) in U.S. Currency*, 517 F. Supp.2d 437, 439-40 (D.D.C. 2007) (claimant lacked statutory standing to challenge seizure of res because he did not file an answer until two months after statutory deadline for claims); *United States v. 328 Pounds More or Less, of Wild American Ginseng*, 347 F. Supp.2d 241, 249 (W.D.N.C. 2004) (dismissing claim where claimant failed to comply with Supplemental Rules requirements, including filing of an answer); *United States v. $288,914 in U.S. Currency*, 722 F. Supp. 267, 270-71 (E.D. La. 1989) (Supplemental Rules require that answer be stricken and default judgment be entered against claimant who filed answer 20 days after deadline, because "a claimant must strictly comply with the pleading requirements" embodied in those rules).

To be sure, "a court has discretion in appropriate circumstances to depart from the strict compliance standard." *United States v. Amiel*, 995 F.2d 367, 371 (2nd Cir. 1993); *see also 328 Pounds*, 347 F. Supp.2d at 248 (similar). But the Young Claimants fail to identify any special or extenuating circumstances that might warrant relaxation of the Supplemental Rule G(5)(b) requirement that they file an answer within 20 days after their claim. They were unquestionably on notice of their duty to file an answer, as reflected in the published Notice of Civil Judicial Forfeiture, Supplemental Rule G(5)(b), and § 983(a)(4)(B). The Young Claimants never petitioned this Court for an extension of time to file an answer, nor did they ever file an answer. They never suggested that they lacked actual notice of this action, nor could they reasonably do

so, given the Government's compliance with all notice requirements and their timely filing of a claim.[14]  They never maintained that they relied to their detriment on any false or improper representations by the Government.  Simply put, this Court is left with no explanation for the Young Claimants' failure to file an answer, and no colorable basis for deviating from the strict compliance with the standing aspects of the Supplemental Rules which federal courts typically enforce strictly in the civil forfeiture context.[15]

In light of the foregoing, the Court finds that the Young Claimants' failure to file an answer pursuant to Supplemental Rule G(5)(b) deprives them of statutory standing to pursue their claim to the Property.  Accordingly, the Government's Motion to Strike is **granted** pursuant to Supplemental Rule G(8)(c)(i)(A) as to the Young Claimants, whose claim is hereby **stricken** for failure to comply with applicable procedural requirements.

> 2.      *Article III Standing.*

Even if the Young Claimants did possess statutory standing to litigate their claim to the Property in this civil forfeiture action, the Court would nonetheless strike their claim for lack of Article III standing because they do not hold a sufficient interest in the Property to create a case or controversy.  *See* Supplemental Rule G(8)(c)(i)(B) (claim may be stricken "because the claimant lacks standing").

"It is well established that in order to contest a forfeiture, a claimant first must demonstrate a sufficient interest in the property to give him Article III standing; otherwise, there

---

[14]      *See generally United States v. One Piece of Real Prop. Located at 15010 S.W. 168th Street, Miami, FL*, 2008 WL 659472, *3 (S.D. Fla. Mar. 6, 2008) (claimant's "actual knowledge of the case prevents a finding that there was good cause for his failure to submit a claim").

[15]      At best, the Young Claimants suggest that they are unable to admit or deny the allegations of the Complaint because they are not named as parties in this *in rem* proceeding. (Doc. 48, at 3.)  But that explanation is unpersuasive.  The Young Claimants are situated no differently than claimants in any other civil forfeiture action.  By their nature, civil forfeiture actions are typically brought *in rem*, and claimants are typically not named as parties. Nonetheless, the Supplemental Rules unequivocally place on claimants a duty timely to file an answer admitting or denying the allegations of the complaint.  It is simply not true that the Young Claimants were unable to file such an answer or that it was impossible or impracticable for them to comply with Supplemental Rule G(5)(b).

is no 'case or controversy,' in the constitutional sense, capable of adjudication in the federal courts." *United States v. $38,000.00 Dollars in U.S. Currency*, 816 F.2d 1538, 1543 (11th Cir. 1987); *see also United States v. Real Property Located at 475 Martin Lane, Beverly Hills, CA*, 545 F.3d 1134, 1140 (9th Cir. 2008) ("To demonstrate Article III standing in a civil forfeiture action, a claimant must have a sufficient interest in the property to create a case or controversy.") (citations and internal quotation marks omitted). "Article III standing exists only if the claimant has a legally cognizable interest in the property that will be injured if the property is forfeited to the government." *United States v. $7,000.00 in U.S. Currency*, 583 F. Supp.2d 725, 729 (M.D.N.C. 2008) (citations and internal quotation marks omitted). "[A] claimant bears the burden of establishing his own constitutional standing at all stages in the litigation. ... [A]t the summary judgment stage, a claimant must prove by a preponderance of the evidence that he has a facially colorable interest in the res such that he would be injured if the property were forfeited to the United States; otherwise, no case or controversy exists capable of federal court adjudication." *United States v. $148,840.00 in U.S. Currency*, 521 F.3d 1268, 1273 (10th Cir. 2008).[16]

It is undisputed that the Young Claimants conveyed their entire interest in the Property to Norman and Tammy Young in fee simple via warranty deed executed on May 21, 2005. On its face, the deed leaves no ambiguity and no room for any assertion that the Young Claimants retained or preserved any legally cognizable interest in the Property for themselves. The Young Claimants do not contend that the deed left them with any residual right to the Property. Nonetheless, the Young Claimants insist that they do have a legitimate interest in the Property because "the deed that was provided by them to Norman and Tammy Young was secured fraudulently," such that the Young Claimants "are entitled to bring an action to have the

---

[16]      *See also Ford 250 Pickup*, 980 F.2d at 1246 ("In order to show standing to contest a forfeiture, one must first show ownership. ... To be heard in court, one must first prove the threshold requirement that he or she is the owner of the property subject to the forfeiture action."); *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1505 (11th Cir. 1993) ("Initially, the claimant must establish standing as an owner of the contested property."); *Amiel*, 995 F.2d at 371 ("Only those with legitimate possessory interests have standing to challenge forfeitures."); *United States v. 8 Gilcrease Lane, Quincy Fla. 32351*, 587 F. Supp.2d 133, 138 (D.D.C. 2008) ("Only valid claimants may challenge the seizure of assets in forfeiture cases.").

conveyance set aside due to failure of consideration as well as being a fraudulent conveyance."
(Doc. 48, at 4.)  The Young Claimants provide not a single citation to any authority for this
proposition, nor do they identify any supporting evidence in the record that might satisfy the
applicable legal standard for rescission of a deed. As a result, they have given the Court nothing
but their own conclusory say-so that the May 2005 conveyance may be undone, enabling them to
assert a legally cognizable interest in the Property on these grounds.

      After careful examination of the record and applicable law, the Court concludes that the
Young Claimants lack a cognizable interest in the Property as needed to confer upon them
Article III standing to challenge its forfeiture.  As an initial matter, it is clear that the existence
(if any) of the Young Claimants' interest in the Property must be gauged by reference to
Alabama state law.[17]  By Alabama statute, conveyances must be made in writing, and estates are
taken as fee simple unless it clearly appears that a lesser estate was intended.  Ala. Code §§ 35-4-
2, 35-4-20.  On its face, the warranty deed purports to convey the Young Claimants' entire legal
interest in the Property to Norman and Tammy Young with no conditions, carve-outs, or
remainder interest of any kind.  If the warranty deed is accepted at face value, the Young
Claimants clearly have no interest in the Property.  Nonetheless, the Young Claimants would
evade the plain text of the deed by invoking the right to set aside the conveyance on grounds of
failure of consideration and fraudulent conveyance.  Neither theory has merit.

      With regard to their suggestion that the Warranty Deed may be voided or canceled for
lack of consideration, they are correct that the record shows that the Young Claimants received
nothing of value from Norman and Tammy Young in exchange for their gratuitous conveyance
of the Property.  But this fact is immaterial.  Under Alabama law, any attack on the warranty
deed as lacking consideration would be frivolous, for the simple reason that lack of consideration

---

[17]    *See, e.g., United States v. Timley*, 507 F.3d 1125, 1129-30 (8th Cir. 2007)
(explaining that "a court must first look to the law of the jurisdiction that created the property
right to determine whether the claimant has a valid interest," and where that property right arises
under state law, "[i]f the claimant has no interest under state law, the inquiry ends, and the claim
fails for lack of standing"); *United States v. 5 S 351 Tuthill Road, Naperville, Ill.*, 233 F.3d 1017,
1021 (7th Cir. 2000) ("State law defines and classifies property interests for purposes of the
forfeiture statutes, while federal law determines the effect of the property interest on the
claimant's standing.").

is not a valid basis for setting aside a conveyance of real property.  *See, e.g., Sintz v. Stone*, 562 So.2d 228, 229 (Ala. 1990) ("A deed is valid and operative as between the parties and their privies whether founded on consideration or not.") (citation omitted); *Williamson v. Matthews*, 379 So.2d 1245, 1247 (Ala. 1980) ("Even a total failure of consideration is an insufficient ground for the cancellation of an otherwise valid deed.").  Therefore, the Young Claimants cannot conjure up a cognizable interest in the Property by simply pointing out that the warranty deed was not founded on consideration.

Nor is the Young Claimants' alternate theory of fraudulent conveyance available to vest them with a cognizable property interest in the Property.  Under Alabama law, "the concurrence of three elements is necessary before a conveyance can be declared fraudulent: (1) that the creditor was defrauded; (2) that the debtor intended to defraud; and (3) that the conveyance was of property out of which the creditor could have realized his or her claim or some portion of it." *Cox v. Hughes*, 781 So.2d 197, 201 (Ala. 2000); *see also* Ala. Code § 8-9-6 (setting forth Alabama law of fraudulent conveyances and providing that "[a]ll conveyances ... of any estate or interest in real or personal property ... made with intent to hinder, delay or defraud creditors, purchasers or other persons of their lawful actions, damages, forfeitures, debts or demands ... are void").  Alabama courts have explained that "where one seeks to set aside a conveyance because of constructive fraud, the complainant bears the burden of showing that his or her debt antedated the conveyance." *Cox*, 781 So.2d at 201 (citation omitted).  Obviously, the doctrine of fraudulent conveyance has no application here.  There is no indication that the Young Claimants were owed anything by Norman and Tammy Young, or vice versa, prior to the conveyance.  The Young Claimants do not suggest that the Property was conveyed to Norman and Tammy Young with the intent to hinder, delay or defraud a creditor from collecting on a claim.  There is no hint of evidence that the Property was conveyed as a sham to avoid a debt or to prevent the Young Claimants or some third-party creditor from recovering money owed; indeed, no debtor-creditor relationships are alleged to exist here at all.  Accordingly, the Young Claimants' bare mention of a potential cause of action for "fraudulent conveyance" is woefully inadequate to establish a cognizable interest in the subject Property, where none of the elements of such a cause of action

-15-

appear to be satisfied here.[18]

It is possible that the Young Claimants misspoke in articulating a fraudulent conveyance theory.  To the extent that they actually intended to state that they have a claim against Norman Young for fraud because they conveyed the property to him in reliance on misrepresentations concerning his intentions, nothing in the record supports such a theory of recovery.  To be sure, Alabama courts have held that deeds procured by fraud may be set aside.  *See, e.g., Popwell v. Greene*, 465 So.2d 384 (Ala. 1985) ("Alabama has long recognized that a deed obtained by fraud will be set aside."); *Holland v. Hoffman*, 443 So.2d 931, 932 (Ala. 1983) (same).  "To constitute fraud upon which cancellation of a deed can be based, a false representation must be a representation of existing fact and not a promise of something to be done in the future, unless it is shown that at the time a promise of future performance was made it was made with the intention of deceiving and with no intention of fulfilling that promise."  *Popwell*, 465 So.2d at 386.[19]

The Young Claimants have not alleged, much less demonstrated, the existence of genuine issues of material fact on the question of fraudulent intent.  In fact, they have failed to make any showing that when Norman Young told them that he intended to reconvey the Property to them after obtaining and paying off a home construction loan, such promise was made with the intention of deceiving and with no intention of fulfilling that promise, as required to sustain a claim for rescission of the deed.  By the Young Claimants' own admission, there was never any definite, agreed-upon time frame or deadline by which Norman Young must obtain the loan,

---

[18]     Perhaps the Young Claimants gravitated to this fraudulent conveyance notion because of its 10-year statute of limitations.  *See, e.g., Pinto Credit Union v. Brown*, 535 So.2d 139 (Ala. 1998) ("The correct statute of limitations to be applied in fraudulent conveyance cases involving real property is found in Code 1975, § 6-2-33."); Ala. Code § 6-2-33 (providing that actions for recovery of lands must be commenced within 10 years).  Be that as it may, principles of fraudulent conveyance have no discernable connection to any dispute between the Young Claimants, on the one hand, and Norman and Tammy Young, on the other.

[19]     "Stated another way, while the mere failure to perform a promise does not authorize rescission of a deed, a false representation of existing fact or a material promise to do something in the future, which is made by the promissor with no intention to perform, will authorize rescission.  The essence of the fraud in the latter situation is not the breach of a promise but the fraudulent intent not to perform."  *Id.*

payoff the loan, and reconvey the Property to his brothers.  As such, it is far from clear that the Young Claimants could show that Norman Young even breached a promise to them.  Even if they could, mere breach of a promise is not enough to give them a legal interest in the Property. To present a cognizable fraud claim for rescission of the deed, they would have to show much more than that; to-wit: that Norman Young never intended to perform at the time when he made the promise.  This they cannot do, and have never ever attempted to do.  The record belies any inference of fraudulent intent at the time the promise was made.  After all, it is undisputed that within weeks after the May 2005 warranty deed was executed, Norman Young offered to reconvey the Property back to his brothers because he had elected not to get a home construction loan at that time.  It is similarly undisputed that the Young Claimants declined that offer.  Such a sequence of events is fundamentally inconsistent with notions of fraud, and particularly the requirement that the Young Claimants must prove that Norman Young's promise to reconvey the Property to his brothers was made with the intent to deceive.  Surely, if he had been trying to trick them into conveying the Property to him, Norman Young would not have offered to give it back and revealed his true intentions (*i.e.*, not to get a loan) several weeks later.  Yet he did. Likewise, if the Young Claimants had relied to their detriment on his stated reason for wanting the Property at the time of the conveyance, they would have jumped at the opportunity to have the deed restored to them upon learning that he was not going to follow through on his promise at that time.  Yet they did not.

Other facts bolster the conclusion that there are no material factual disputes as to fraud. For instance, the record shows that Norman Young's dealings with regard to the Property are indistinguishable from William Young's handling of another parcel that his brothers signed over to him for the same purpose, only to have him never follow through and obtain a loan.  Now, years after the fact, that parcel remains deeded solely to William Young.  If William Young's conduct was not fraudulent (and the parties have never suggested that it was), then Norman's cannot have been, either.  Furthermore, both William and Clyde Young testified unequivocally that Norman Young had not engaged in fraudulent conduct.  If two of the three Young Claimants emphatically deny that Norman Young made any misrepresentations to procure the deed, how could they possibly sustain a viable action for cancellation of the deed on the basis of such fraud?  They could not.  As for the third Young Claimant, Morris Young testified only that he

thought Norman Young had "broke that promise with us" by not getting the loan.  (M. Young Dep., at 26.)  According to *Popwell* and the other Alabama authorities cited above, however, mere breach of a promise is not a basis for rescission on fraudulent grounds.  Inasmuch as (1) not a single participant in the May 2005 Property conveyance testified to a belief that Norman Young had defrauded them or made promises deceitfully and with the intent of not performing them, (2) at least two of the three Young Claimants testified to the exact opposite, and (3) the Young Claimants have proffered neither evidence nor argument that Norman Young harbored a fraudulent intent not to perform when the deed was executed, they cannot possibly sustain a viable cause of action against him to rescind the deed on grounds of fraud.

In short, it is the opinion of this Court that the Young Claimants have no legally cognizable claim for rescission of the warranty deed.  Given that they conveyed all of their right, title and interest in the Property to Norman and Tammy Young via that deed, it follows that the Young Claimants have no legal interest in the Property today.  They therefore lack Article III standing to contest the forfeiture, and as to them, there is no case or controversy.  The Government's Motion to Strike the claim of the Young Claimants is therefore due to be **granted** pursuant to Supplemental Rule G(8)(c)(i)(B), for lack of standing.

## III.  The Brazell Claimants.

### A.  *Nature and Factual Basis of the Claim.*[20]

The second group of claimants is comprised of Timothy Ryan Brazell and Becky Diane Brazell (collectively, the "Brazell Claimants"), who are husband and wife.  Becky Brazell is the sister of Norman Young and the Young Claimants.  (Doc. 20, Exh. A, at ¶ 3.)  In their Verified Claim filed on August 25, 2008, the Brazell Claimants claim an interest in the Property "based on the actual continuous, notorious, exclusive and hostile possession and payment of taxes on the property sought to be condemned for a period of ten (10) or more years."  (Doc. 20, at 1.)  The Verified Claim specifically identifies Alabama Code § 6-5-200 as the source of the Brazell Claimants' purported interest in the Property.

---

[20]     As it did with respect to the Young Claimants' claim, the Court construes the record, including all evidence and factual inferences, in the light most favorable to the Brazell Claimants for purposes of evaluating the Government's Motion.  The Brazell Claimants' evidence is taken as true and all justifiable inferences are drawn in their favor.

The factual basis for the Brazell Claimants' claim to the Property is as follows:  The Brazell Claimants own land that is contiguous to, but outside the bounds of, the Property for which civil forfeiture is sought in this action.  (Doc. 20, Exh. A, ¶¶ 5-6; doc. 47-2, ¶ 2.)  The Brazell Claimants have resided on their contiguous parcel, adjacent to the Property, since January 2000.  (Doc. 20, Exh. A, ¶ 6; doc. 47-2, ¶ 2.)  They acknowledge that the Property is deeded solely in the names of Norman and Tammy Young, and that no one has ever conveyed the Property to them in writing.  (T. Brazell Dep., at 55; B. Brazell Dep., at 25, 29.)  However, the record in the light most favorable to the Brazell Claimants is that they have used the Property "for farming, pasturing of animals, and planting of crops since 1993."  (Doc. 47-2, ¶ 2.)  The Brazell Claimants maintain that they have housed cows and horses; planted potatoes, sweet corn and winter rye grass; and fertilized, fenced and claimed a 20-acre portion of the Property as their own during that period of time.  (*Id.*)  They further state that "[s]ince 1993, [the Brazell Claimants] have openly, continuously claimed as against the whole world, sole and exclusive use, occupation and ownership of the twenty (20) acres which we have fenced and paid expenses on.  During this time frame, a claim of ownership, use and occupation of the premises has been actual, adverse, continuous, hostile, open, notorious and exclusive."  (*Id.*, ¶ 3.)  On that basis, the Brazell Claimants claim an interest in the Property pursuant to Alabama's doctrine of adverse possession.

**B.      *Analysis of Plaintiff's Motion to Strike or for Summary Judgment.***

In its Motion to Strike / Motion for Summary Judgment, the Government asserts that the Brazell Claimants' claim should be stricken or dismissed for lack of Article III standing.  Simply stated, the Government's position is that the Brazell Claimants lack a legally cognizable interest in the Property sufficient to confer upon them standing to contest its forfeiture.  Given that the Brazell Claimants' claim is predicated exclusively on an adverse possession theory, the Motion turns on whether the Brazell Claimants have established adverse possession of the Property under Alabama law.

The parties concur that resolution of whether the Brazell Claimants do or do not have Article III standing turns on application of the statutory adverse possession mechanism created

-19-

by Alabama Code § 6-5-200.[21]  Statutory adverse possession requires both of the following elements: (1) "open, notorious, hostile, continuous, and exclusive possession under a claim of right" for a period of at least 10 years; and (2) "that the possessor have held under color of title, have paid the taxes on the property for 10 years, or have derived his title by descent or devise." *Harper v. Smith*, 582 So.2d 1089, 1091 (Ala. 1991); *see also Tidwell v. Strickler*, 457 So.2d 365, 368 (Ala. 1984).  For purposes of the pending dispositive Motion, the Government does not challenge the Brazell Claimants' showing that, as to a 20-acre portion of the Property, they have held open, notorious, hostile, continuous and exclusive possession under a claim of right for at least 10 years.  Therefore, the first prong of the *Harper* test for adverse possession is deemed satisfied for purposes of the pending Motion.

The Government maintains, however, that the Brazell Claimants satisfy none of the three alternatives for the other prong (*i.e.*, that they have held under color of title, have paid taxes for 10 years, or have derived title by descent or devise).  Each of these three alternatives is specifically delineated in, and governed by, § 6-5-200.  To satisfy the "hold under color of title" option for statutory adverse possession, a claimant must show "that a deed or other color of title purporting to convey title to him has been duly recorded in the office of the judge of probate of the county in which the land lies for 10 years."  § 6-5-200(a)(1).  The record is devoid of any evidence or argument that any deed or color of title exists in favor of the Brazell Claimants concerning the Property; therefore, this avenue for securing statutory adverse possession is unavailable.  *See generally Green v. Dixon*, 727 So.2d 781, 783 (Ala. 1998) ("Simply put, color of title is a writing that appears to transfer title but that in reality does not.").  Similarly, the "descent or devise" alternative requires a showing that the claimant "derives title by descent cast

---

[21]  Specifically, the Government states that "[t]he Brazells base their claim on § 6-5-200, Code of Alabama (1975)."  (Doc. 41-2, at 21.)  And the Brazell Claimants state that their "allegations in this case are that pursuant to § 6-5-200, Code of Alabama (1975), they have gained title by adverse possession to the premises by having the property assessed by those whom they claim title through annually coupled with the payment of taxes and open, notorious, continuous, hostile and exclusive use of the property for ten (10) or more years."  (Doc. 46, at 2.)  The parties having thus framed the issue exclusively in terms of the statutory adverse possession vehicle created by § 6-5-200, the Court will not *sua sponte* consider the availability or applicability of any other possible theories by which the Brazell Claimants might have asserted an ownership interest here.

or devise from a predecessor in the title who was in possession of the land."  § 6-5-200(a)(3).
There has been no evidence or argument presented that might support a right to statutory adverse
possession for the Brazell Claimants on this theory, either.

The critical question, then, is whether the Brazell Claimants can achieve statutory
adverse possession via the "paid taxes" alternative, which requires a showing that they "shall
have annually listed the land for taxation in the proper county for 10 years prior to the
commencement of the action if the land is subject to taxation."  § 6-5-200(a)(2).  The Brazell
Claimants make an evidentiary showing that they have paid taxes on a *pro rata* basis for their
claimed portion of the Property for at least 10 years.  In that regard, the Brazell Claimants aver
that "[f]rom 1993 forward, we have contributed a *pro rata* share of these taxes which have been
paid on the twenty (20) acres that we are claiming on a yearly basis through at least 2005."
(Doc. 47-2, ¶ 5.)  The Government responds, however, that such evidence is legally insufficient
to comport with § 6-5-200(a)(2), which is phrased as a "listing" requirement, not a "payment"
requirement.  Alabama authority strongly supports the Government's position.  Indeed, the
Alabama Supreme Court has made clear that merely paying taxes is insufficient to satisfy
subsection (a)(2)'s "listing" requirement, inasmuch as "[w]e cannot infer that 'paying' taxes is
the same as 'listing' the land for taxation in the name of the party claiming by adverse
possession.  It is possible to pay taxes on a parcel of land without having it listed in the payor's
name." *Jones v. Jones*, 423 So.2d 158, 161 (Ala. 1982); *see also Bohanon v. Edwards*, 970
So.2d 777, 783 (Ala.Civ.App. 2007) ("Because Edwards did not pay the taxes on parcels 10 and
12 in his name, Edwards does not meet the requirements for statutory adverse possession with
regard to parcels 10 and 12.").  To satisfy § 6-5-200(a)(2), then, what is necessary is proof akin
to that offered in *Bradley Outdoor, Inc. v. Colonial Bank*, 952 So.2d 359 (Ala. 2006), wherein
the claimant presented evidence not only that she had paid taxes on the property for more than
10 years, but also that such property tax had been assessed in the claimant's name throughout
that time period.  The *Bradley Outdoor* court deemed this evidence sufficient to comport with
the listing requirement of § 6-5-200(a)(2).  *See* 952 So.2d at 362.

The Brazell Claimants do not contend that the Property was ever listed in both or either
of their names for taxation purposes, much less for the 10-year duration mandated by § 6-5-
200(a)(2).  They do not come forward with any facts tending to show compliance with the

"listing" requirement for statutory adverse possession.  To the contrary, they readily admit that "taxes have been assessed continuously in Rosalie Young, Becky Brazell's grandmother, and Norman and Clyde Young's names from 1984 to 2005."  (Doc. 47-2, ¶ 5.)[22]  That admission on its face is fatal to their reliance on subsection (a)(2) to establish a cognizable claim of statutory adverse possession over the Property, under a straightforward reading of *Jones* and *Bohanon*.

Nonetheless, the Brazell Claimants contend that they are exempted from the statute's listing requirement as a matter of law by operation of § 6-5-200(b).  That subsection reads, in its entirety, as follows:

> "If the period during which the party's deed or color of title has been on record, added to the time during which the deeds or color of title of those through whom he claims have been on record, amounts to 10 years, he may defend or prosecute on his adverse possession, and ***an inadvertent failure to list the land for taxation, any unintentional mistake in the description of the assessment or unintentional omission of any part of it from the assessment*** during the period of 10 years shall not bar the party of his action or defense on his adverse possession."

Ala. Code § 6-5-200(b) (emphasis added).  The Brazell Claimants insist, with no analysis or explanation whatsoever, that the highlighted portion of the statutory language excuses their failure to list the Property in their names for taxation purposes.

It does not appear that Alabama courts have had occasion to construe this portion of § 6-5-200(b) in the more than three decades since the Alabama Code of 1975 went into effect.  Nonetheless, the Brazell Claimants' contention fails for three reasons.  First, parsing the language of § 6-5-200(b), the undersigned is persuaded that the inadvertent failure / unintentional mistake language pertains only to circumstances where a party seeks to establish statutory adverse possession through the "deed or color of title" method described in § 6-5-200(a)(1).  As the Court reads it, subsection (b) provides that if a party's deed or color of title has been recorded for at least 10 years (either directly or cumulatively with the deeds or color of

---

[22]     Exhibits filed by the Brazell Claimants in opposition to the Government's motion confirm that during the relevant period of time, the Property was listed for taxation purposes in the name of Rosalie Young and, later, in the names of Norman, Clyde and William Young, and more recently, in the names of Norman and Tammy Young.  (*See generally* doc. 47.)  Nothing in the property tax records furnished by the Brazell Claimants suggests that the Property, or any portion of same, has ever been listed with taxing authorities in the names of Timothy and/or Becky Brazell.

title of those through whom he claims title), that party can maintain an adverse possession action or defense even if he inadvertently neglected to list the property for taxation or made an unintentional mistake in describing the assessment.  In other words, the statute is structured so that a party possessing a deed or color of title for the requisite temporal period is not stripped of adverse possession rights simply because of an inadvertent, technical omission as to listing or description of the property for tax purposes.  Such a situation is not present here, inasmuch as the Brazell Claimants have presented no evidence and made no arguments that they have possessed deed or color of title to the Property for at least 10 years.

Second, the Brazell Claimants' conclusory, self-serving interpretation of § 6-5-200(b) would eviscerate § 6-5-200(a)(2).  Recall that subsection (a)(2) provides that one of three alternatives for eligibility for statutory adverse possession is that the person seeking adverse possession status "shall have annually listed the land for taxation in the proper county for 10 years."  Ala. Code § 6-5-200(a)(2).  The Brazell Claimants' reading of § 6-5-200(b) would subvert this subsection's listing requirement by excusing compliance as long as the omission was "inadvertent."  Stated differently, the Brazell Claimants would have the Court read section § 6-5-200 as requiring a party to list the land for taxation for 10 years, unless it slipped that party's mind to do so, in which case the requirement would be excused and the subsection (a)(2) alternative would be deemed satisfied.  Such a construction would effectively render the statutory requirements of § 6-5-200(a) illusory because any party could circumvent them simply by professing to have innocently forgotten to list the property for the requisite 10-year period. The practical implication of such a construction of subsection (b) is that, upon a showing absentmindedness, anyone could establish statutory adverse possession, even if they met none of the prerequisites of § 6-5-200(a), effectively writing that subsection out of the statute.  The Court cannot blithely accept the Brazell Claimants' unsupported, bare suggestion that the Alabama Legislature intended to make the tripartite options of § 6-5-200(a) a nullity for any party who simply incants the words, "I forgot."  Time-honored canons of statutory construction would militate heavily against such a heavy-handed and absurd approach.[23]

--------

[23]     *See, e.g., City of Montgomery v. Town of Pike Road*, --- So.3d ----, 2009 WL 1585832, *4 (Ala. June 5, 2009) (recognizing obligation to "consider the statue as a whole and ...

Third, even if the Brazell Claimants are correct that § 6-5-200(b) is available to excuse their admitted non-compliance with the listing requirement of subsection (a)(2), they have failed to make any factual showing that might bring this case within the realm of subsection (b).  There is no record evidence of an "inadvertent failure to list the land for taxation" by the Brazell Claimants.  To the contrary, the record is utterly silent as to why the Brazell Claimants failed to list the Property in their names with Mobile County taxing authorities.  Similarly, the Brazell Claimants have made no showing whatsoever of "any unintentional mistake in the description of the assessment or unintentional omission of any part of it from the assessment."  The Brazell Claimants would apparently have this Court simply assume, with no evidentiary foundation, that facts exist which might support reasonable inferences that these particular statutory provisions are triggered.  Such assumptions are inappropriate and impermissible at the summary judgment stage.  *See, e.g., Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006) (district court has no "obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention"); *Florida Public Interest Research Group Citizen Lobby, Inc. v. E.P.A.*, 386 F.3d 1070, 1083 (11th Cir. 2004) (when defendant raises standing at summary judgment stage, plaintiff cannot rest on mere allegations but "must set forth by affidavit or other evidence specific facts" showing standing) (citation omitted); *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000) ("This court has consistently held that conclusory allegations without specific supporting facts have no probative value.").  Thus, the Brazell Claimants cannot rely on subsection (b) because they have proffered not even a scintilla of evidence that this case falls within its ambit.

---

construe the statute reasonably so as to harmonize [its] provisions") (citations omitted); *Boutwell v. State*, 988 So.2d 1015, 1020 (Ala. 2007) ("In interpreting a statute, a court does not construe provisions in isolation, but considers them in the context of the entire statutory scheme ...."); *Bean Dredging, L.L.C. v. Alabama Dep't of Revenue*, 855 So.2d 513, 517 (Ala. 2003) (courts interpreting statutes "must read the statute as a whole because statutory language depends on context"); *Weathers v. City of Oxford*, 895 So.2d 305, 309 (Ala.Civ.App. 2004) ("It is a well-established principle of statutory construction that the law favors rational and sensible construction. ... [T]here is a presumption that the Legislature intended a just and reasonable construction and did not enact a statute that has no practical meaning."); *Junkins v. Glencoe Volunteer Fire Dep't*, 685 So.2d 769, 772 (Ala.Civ.App. 1996) ("a statute is to be given a practical construction and not applied in such a way as to lead to absurd results").

In sum, after construing all record evidence and reasonable inferences therefrom in the light most favorable to the Brazell Claimants, the Court finds as a matter of law that they have no viable claim for statutory adverse possession of the Property, or any portion of same.  As such, the Brazell Claimants lack any cognizable legal interest in the Property, and do not possess Article III standing to contest its forfeiture herein.  The Government's Motion to Strike the claim of the Brazell Claimants is therefore **granted** pursuant to Supplemental Rule G(8)(c)(i)(B), for lack of standing.

IV.   **The Government's Entitlement to Forfeiture under § 881(a)(7).**

Having stricken both the Young Claimants' claim and the Brazell Claimants' claim for lack of standing, the Court now turns to the Government's request for entry of judgment forfeiting the subject Property to it.  Because this action was brought *in rem*, merely concluding that the Government is entitled to prevail against all claimants is not necessarily dispositive of the legally distinct question of whether forfeiture of the res is appropriate.  *See, e.g., United States v. Approximately $141,932.00 in U.S. Currency*, 2008 WL 190878, *9 (E.D. Cal. Jan. 18, 2008) ("To obtain an *in rem* judgment in a civil forfeiture action, Plaintiff must show that it is entitled to a judgment not only against all claimants and potential claimants, but also against the property to be forfeited, affecting the interests of all persons in the property.").

As noted *supra*, the Government is proceeding under the forfeiture provisions of the Controlled Substances Act, which authorize forfeiture of all real property "which is used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, a violation of" the Act punishable by more than one year's imprisonment.  21 U.S.C. § 881(a)(7).  "For property to be forfeit under section 881, the government first must show probable cause to forfeit the property."  *United States v. Four Parcels of Real Property in Greene and Tuscaloosa Counties in State of Ala.*, 941 F.2d 1428, 1438 (11th Cir. 1991); *see also United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) ("In a forfeiture suit, the government would have the burden of proving that the property was subject to forfeiture ....").  In this regard, "it is the Government's burden to show probable cause for the belief that the property to be forfeited is substantially connected to drug dealing."  *United States v. Two Parcels of Real Property Located in Russell County, Ala.*, 92 F.3d 1123, 1126 (11th Cir. 1996); *see also United States v. Cleckler*, 270 F.3d 1331, 1333-34 (11th Cir. 2001) ("In a civil forfeiture

action under section 881(a)(7), the government must establish probable cause to believe that a substantial connection exists between the defendant-property and an illegal exchange of a controlled substance."); *$38,000.00 Dollars*, 816 F.2d at 1548 (holding that "a section 881(a) forfeiture complaint must allege sufficient facts to provide a reasonable belief that the property is subject to forfeiture: in particular, that the government has probable cause to believe that a substantial connection exists between the property to be forfeited and the exchange of a controlled substance").  "Probable cause in this context is a reasonable ground for belief: something more than mere suspicion but less than prima facie proof."  *Cleckler*, 270 F.3d at 1334.  Where real property has a substantial connection to illegal drug transactions, it is properly deemed forfeit under § 881(a)(7).[24]  In gauging the sufficiency of the Government's evidentiary showing, a district court may consider both circumstantial evidence and hearsay, and "should evaluate the evidence presented with a common sense view to the realities of normal life." *United States v. $291,828.00 In U.S. Currency*, 536 F.3d 1234, 1237 (11th Cir. 2008) (citation omitted).

Here, the Government has come forward with abundant evidence that the Property bore a substantial connection to the controlled substance dealings of Norman Young and his co-conspirators.  Indeed, the record demonstrates that the Property served as a transit hub, a clearinghouse, a storage facility, and a transaction situs for vast quantities of marijuana.  The Government has shown by a preponderance of the evidence that Norman Young stored hundreds of pounds of marijuana on the Property (including in trailers and in a bunker beneath the barn), that he received marijuana on the Property from his suppliers, that he paid his suppliers on the Property for those shipments, and that he and his co-conspirators otherwise conducted and facilitated large-scale marijuana transactions on the Property.  On the strength of this showing, the Court readily concludes that the Government has met its burden of establishing probable

---

[24]     *See United States v. Approximately 50 Acres of Real Property located at 42450 Highway 441 North Fort Drum, Okeechobee County, Fla.*, 920 F.2d 900, 903 (11th Cir. 1991); *United States v. 3402 53rd Street West, Bradenton, FL*, 2006 WL 1130865, *2 (11th Cir. Apr. 28, 2006) ("To obtain civil forfeiture, the government must establish by a preponderance of the evidence a substantial connection between the property and the offense.") (citation and internal quotation marks omitted).

cause for a belief that the Property is subject to forfeiture under 21 U.S.C. § 881(a)(7).  There is overwhelming evidence of a substantial connection between the Property and marijuana distribution activities in violation of the Controlled Substances Act.  There are no valid claimants in these proceedings, and no evidence that the Property was not used to facilitate marijuana transactions in violation of the Act.  Nor is there any factual basis for any suggestion that the owners of the Property (Norman and Tammy Young) are innocent owners or that they otherwise have viable affirmative defenses to civil forfeiture.[25]

In light of the foregoing, the Court finds that the Government is entitled to forfeiture of the Property pursuant to 21 U.S.C. § 881(a)(7) and 18 U.S.C. §§ 983 and 985.

**V.      Conclusion.**

For all of the foregoing reasons, it is hereby **ordered** as follows:

1.      The Government's Motion to Strike / Motion for Summary Judgment (doc. 41) is **granted** in its entirety.

2.      The Verified Claim (doc. 19) brought by claimants Clyde Young, Jr., William Thomas Young and Morris E. Young is **stricken** for lack of statutory and Article III standing, pursuant to Supplemental Rule G(8)(c)(i)(A) & (B).

3.      The Verified Claim (doc. 20) brought by claimants Timothy Ryan Brazell and Becky Diane Brazell is **stricken** for lack of Article III standing, pursuant to Supplemental Rule G(8)(c)(i)(B).

4.      The *in rem* defendant, to-wit: 40 acres of real property, more or less, together with its building, appurtenances, improvements, fixtures, attachments and easements, that would constitute the residence, curtilage and outlying property of Norman Young and Tammy Young in Mobile County, Alabama, as more fully described herein, is **ordered** to be forfeited to the plaintiff, the United States of America, for disposition according to law pursuant to the provisions of 21 U.S.C.

---

[25]      To the contrary, Tammy Young, one of the owners of record of the Property, has acknowledged in writing that "the residence and surrounding property that she and Norman Young resided at, as identified in the indictment and plea agreement, was used to conduct and facilitate marijuana transactions to include the storage of marijuana and marijuana proceeds and is forfeitable to the United States as such."  (Doc. 41-16, at 6.)

-27-

§ 881(a)(7) and 18 U.S.C. §§ 983 and 985.  A separate Judgment will be entered.

5.     This Order and the accompanying Judgment resolving all matters and issues

joined in this action, the Clerk of Court is directed to close this file for

administrative and statistical purposes.

DONE and ORDERED this 24th day of June, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE